[No. 36272.   Department Two.   June 13, 1963.]

ALDERWOOD WATER DISTRICT, *Appellant*, v. POPE & TALBOT, INC. *et al.*, *Respondents.**

*Cooper & Cooper*, for appellant.

*Howe, Davis, Riese & Jones*, for respondent Pope & Talbot, Inc.

*Jordan & Britt*, for respondent Silver Lake Water District.

FINLEY, J.—Alderwood Water District and Silver Lake Water District are adjoining municipal corporations, created in compliance with RCW Title 57, and possessing the powers therein conferred by the legislature. Pope & Talbot, Inc., is the entrepreneur of a residential real estate development known as Silver Acres No. 7, which is completely within the geographical boundaries of the Alderwood Water

* Reported in 382 P. (2d) 639.

District. Water mains were installed in the Silver Acres development by Pope & Talbot. Subsequently, these water mains were connected with the facilities of the Silver Lake Water District.

The Alderwood Water District initiated this action to enjoin the Silver Lake Water District from supplying water to Silver Acres and to enjoin Silver Acres from receiving such water. Both defendants moved to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. The trial court granted the motion, and a judgment of dismissal was entered. This appeal followed.

The question presented is whether a municipal water district of this state can directly furnish water to the inhabitants of an area located outside the boundaries of such district but within the boundaries of another water district.[1]

An easy solution to that question could be formulated by merely citing, out of context, *some* language from a statute and then proceeding to consider that language as though it existed in a vacuum. For example, a portion of RCW 57.08.045 could be cited and emphasized: ". . . a water district may provide water services to property owners outside the limits of the water district."[2] After parroting the above quoted language, we could mechanically conclude that water districts have the authority to distribute water to individuals outside the boundaries or geographical limits of the district; and that, since there is no geographical or other limitation explicitly imposed upon that authority, one water district can supply water to property owners or persons within the boundaries of another district. However, such a conclusion would sanction the "raiding" of one water district by another, which potentially might well be inimical to an orderly and economically well-planned development and utilization of public water service in rapidly expanding suburban residential areas.

[1] There is no question about the authority of one water district to purchase or take water from another district. RCW 57.08.010 provides: "A water district may purchase and take water from any municipal corporation."

[2] RCW 57.08.010 contains similar language.

In some Washington cases reference is made to a general rule that there cannot be two municipal corporations exercising the same functions in the same territory at the same time. Although this so-called general rule has been virtually emasculated by the case law of this state, it continues to serve as a touchstone in the sense that it expresses a public policy against duplication of public functions, and that such duplication is normally not permissible unless it is provided for in some manner by statute.[3] In a sense, the "general rule" should alert courts, in situations akin to that of the instant case, to the necessity of closely examining in toto statutory provisions conferring authority upon the potentially competing municipal corporations.

On numerous occasions this court has indicated that a statute should be construed as a whole in order to ascertain legislative purpose, and thus avoid unlikely, strained or absurd consequences which could result from a literal reading. That the spirit or the purpose of legislation should prevail over the express but inept language is an ancient adage of the law. *Eyston v. Studd* (England, 1574), 2 Plowden 460, 464:

". . . intent of statutes is more to be regarded and pursued than the precise letter of them, for oftentimes things, which are within the words of statutes, are out of the purview of them, which purview extends no further than the intent of the makers of the act, and the best way to construe an act of Parliament is according to the intent rather than according to the words. . . ."

The statutory provisions governing the formation, dissolution, procedures and powers of water districts are codified in RCW Title 57. RCW 57.04.070 provides:

"Whenever two or more petitions for the formation of a water district shall be filed as herein provided, the peti-

[3]In *P.U.D. No. 1 of Pend Oreille Cy. v. Town of Newport* (1951), 38 Wn. (2d) 221, 228 P. (2d) 766, the court found statutory authority permitting the town of Newport to create its own electrical distribution system. This authority was not abrogated by the fact that Newport was within the area of an existing P.U.D., and thus the creation of the town system would result in competition with the P.U.D. inside the town.

tion describing the greater area shall supersede all others and an election shall first be held thereunder, and no lesser water district shall ever be created within the limits in whole or in part of any water district."

This statutory prohibition against the geographical overlapping of water districts obviously carries with it an implication that one water district should not infringe upon the territorial jurisdiction of another water district by extending services to individuals therein. This implication is reinforced by the requirement that commissioners of a water district must formulate a comprehensive plan sufficient to fulfill the foreseeable needs of the district before making improvements or incurring any indebtedness. (RCW 57.16.010). In formulating such a plan it is necessary, among other things, to project into the future the probable changes in water consumption per inhabitant, population fluctuations, and the availability of water to the district. The careful consideration of these factors in creating a comprehensive plan could be rendered meaningless if another district is permitted to purloin potential customers from a water district by invading its territory.

Water districts are financed by: the imposition of property tax levies (RCW 57.04.050, 57.16.020, ch. 57.20); revenue bonds (RCW 57.16.010, 57.16.035, 57.16.040, ch. 57.20); creation of local improvement districts (RCW 57.16.050, ch. 57.20); connection charges and the sale of water (RCW 57.08.010, 57.08.080, ch. 57.20). With reference to the property tax, it makes no difference who supplies water to the individual property owner because the tax is levied upon all property within the water district. However, the other methods of financing are dependent upon the district's supplying of water; e.g., revenue is derived from the performance of services by the district, and, in order to create a local improvement district within a water district, it is necessary to show some benefit to the property. Permitting one water district to "raid" another could result in a serious impairment of the "raided" district's financial position. The seriousness of this impairment would of course depend upon the district's ratio between its fixed and mar-

ginal costs for the supplying of water. In other words, the higher the fixed costs the greater the burden that will be cast upon those inhabitants of the "raided" district who continue to receive their water from that district.

■ There are a number of water districts at the present time in the state of Washington, but there remains a substantial portion of the state that is not within the boundaries of any organized water district. It seems obvious, after considering RCW Title 57 in its entirety, that the legislative purpose in permitting water districts to supply water to individuals outside of their districts (RCW 57.08.010, 57.08-.045) was meant to extend water services only to those individuals who were not within the boundaries of any other water district.

If a water district refuses to serve a property owner whose premises are located within the district, or if the cost of such service is not reasonable, an opportunity for relief is available to the property owner, pursuant to RCW 57.28, through a procedure for the withdrawal of territory from the district.

For the reasons indicated hereinbefore, it is hereby ordered that the judgment of the trial court is reversed, and the cause is remanded for further proceedings.

OTT, C. J., DONWORTH, HUNTER, and HAMILTON, JJ., concur.