[No. 36374-7-II.   Division Two.   March 25, 2008.]

LAKE UNION DRYDOCK COMPANY, INC., *Appellant*, v. THE DEPARTMENT OF NATURAL RESOURCES, *Respondent*.

*Eric R. McVittie* and *Markus B.G. Oberg* (of *Legros Buchanan & Paul*), for appellant.

*Robert M. McKenna, Attorney General,* and *Janis L. Snoey, Assistant,* for respondent.

¶1 HUNT, J. — Lake Union Drydock Company, Inc., appeals the trial court's affirmance of the Department of Natural Resources' (DNR) administrative decision to use an alternative upland tax parcel to calculate its rental rate for land it leases to Lake Union Drydock. Lake Union Drydock argues that the DNR's action was contrary to law, or arbitrary and capricious. We disagree and affirm.

## FACTS

### I. Lease Background

¶2 Lake Union Drydock Company, Inc., leases[1] approximately 2.8 acres of submerged state-owned aquatic lands adjacent to a 7.87-acre parcel that it owns along the shore of Lake Union in Seattle. Much of Lake Union Drydock's parcel is also submerged. Lake Union Drydock has occupied the property since 1919 and currently uses it for a commercial marine repair and construction business. Lake Union Drydock has built two piers and three floating drydocks on the submerged land it leases from the DNR. Lake Union Drydock operates and maintains these piers and floating drydocks for ship moorage in conjunction with its marine repair and construction business.

¶3 The DNR is responsible for management and oversight of state-owned aquatic lands, including the property Lake Union Drydock leases. Former RCW 79.90.245 (2004). Former RCW 79.90.480 (2003) prescribes the manner for determining annual rent rates for the lease of state-owned aquatic lands for water-dependent uses: (1) The statute contains a formula for calculating rent based on assessed value of a parcel upland from the leased property, former RCW 79.90.480(3)(a), (b) (2003), and (2) it also requires the DNR to reevaluate the rental rate every four years and to substitute the value of an alternate upland parcel if the assessed value of the upland parcel used in conjunction with the leased parcel is "inconsistent with the purposes of the lease." Former RCW 79.90.480(4) (2003).

¶4 In 1999, the King County Assessor's Office determined that, because the "environmental impact [was] immense," the cost to cure contamination on Lake Union Drydock's leased land exceeded the land's value. Because of

---

[1] Lake Union Drydock occupies the property under an annual tenancy controlled by the terms of an expired lease, modified by a holdover agreement.

the heavy contamination, the county assessor concluded that, for tax purposes, the value of Lake Union Drydock's upland parcel was no longer $5.14 million, but instead was a nominal $1,000. It is undisputed, however, that this contamination has no adverse effect on Lake Union Drydock's shipyard business operations on the property.

## II. RENT CALCULATION

¶5 Reevaluating rental rates in 2001, the DNR informed Lake Union Drydock that its rent would increase incrementally over the next four years from $12,970.29 to $35,360.61. Reevaluating rental rates in 2005, however, the DNR discovered it had not billed Lake Union Drydock for rent due since 2001. Acknowledging that it had failed to bill Lake Union Drydock the increased amount reflecting the 2001 rent reevaluation, the DNR accepted Lake Union Drydock's payments for 2001-02 as paid in full even though the amounts reflected the pre-2001 rental rate.

¶6 In 2005, however, the DNR also (1) billed Lake Union Drydock $55,503.96 for back rent from 2003-05, based on its upland property's $5.14 million county-assessed value in 2001, before discounting for contamination, and (2) prospectively adjusted Lake Union Drydock's annual rental rate to $46,399.63, based on its upland property's approximately $8.57 million assessed value in 2005, before discounting for contamination.

### A. Administrative Appeal

¶7 Following several communications and failed informal requests for recalculation, Lake Union Drydock administratively appealed the DNR's rent reevaluation to the rental dispute officer. Lake Union Drydock argued that the DNR should have based the rent on "the assessed value as determined by the county assessor."[2] On October 28, 2006,

---

[2] An assessed value of $1,000.00 would have resulted in an annual rental rate of $5.41.

the rental dispute officer concluded that the rental rate Lake Union Drydock proposed was inconsistent with the purposes of its lease—the operation of a commercial marine repair and building business. The rental dispute officer also found, however, that the DNR had improperly used the value of the property before contamination, which did not necessarily reflect the actual property value. The rental dispute officer asked the DNR to "locate an appropriate alternate parcel" and to recalculate Lake Union Drydock's rent accordingly.

¶8 Based on similar waterfront characteristics, zoning, and present use, the DNR chose an alternate parcel leased by Seattle City Light. Lake Union Drydock appealed, claiming that the selected alternate parcel was not in the same "use class" as Lake Union Drydock's property. Though the DNR believed the Seattle City Light parcel was "the most comparable alternative parcel," it acknowledged that it "may not have sufficient physical characteristics" and substituted another parcel in the same use class. Lake Union Drydock appealed the DNR's selection of this alternative parcel to the rental dispute appeal officer, who declined review.

## B. Recalculation

¶9 The DNR informed Lake Union Drydock that, based on the alternative parcel, its recalculated annual rental rate was $29,512.92. Lake Union Drydock paid the back rent due, but it preserved its right to appeal the DNR's decision.

## III. Superior Court Writ

¶10 Lake Union Drydock petitioned the Thurston County Superior Court for either a statutory writ of review under RCW 7.16.030 or a constitutional writ of certiorari. The superior court dismissed Lake Union Drydock's petition for statutory writ, but it issued the constitutional writ to review DNR's administrative decision.

¶11 Both parties conceded that the assessor's devaluation of the property due to contamination did not conform to any of the six circumstances in former WAC 332-30-123(3) (1984). Lake Union Drydock argued that the list in former WAC 332-30-123(3) (1984) was exclusive and that the DNR should have used the land's value after adjusting for contamination, $1,000, to calculate Lake Union Drydock's rental rate. The DNR argued that the situations listed in former WAC 332-30-123(3) (1984) were nonexclusive and interpreted the rule as allowing the DNR to substitute an upland parcel whenever "an assessed land value is inconsistent with the purposes of the lease, even when the rule does not expressly describe the situation in question." Clerk's Papers (CP) at 139-40.

¶12 On May 18, 2007, the superior court ruled that the six circumstances listed in former WAC 332-30-123(3) (1984) were nonexclusive. Emphasizing that Lake Union Drydock's proposed rental rate would be less than $6 a year for the entire parcel,[3] the court concluded that Lake Union Drydock had failed to prove that the DNR's decision was contrary to law or arbitrary and capricious because "[t]he Legislature and DNR did not intend the kind of result presented by the circumstances in this case, where there would be such disparity among citizens."[4] CP at 319. The court also noted that on six other occasions, where contamination had significantly reduced the assessed values of state-owned properties, the DNR had deemed the assessed values "inconsistent" with the purposes of the leases and had used alternate upland parcels to calculate rent. The court upheld the DNR's rental rate and ordered Lake Union Drydock to pay rent due.

¶13 Lake Union Drydock sought review by constitutional writ of certiorari, which we granted.

---

[3] Lake Union Drydock's proposed rental rate would have been about $1.90 annually per acre.

[4] The DNR's trial brief noted that the median annual rental rate for water-dependent uses on Lake Union in 2005-06 was $26,113.28 per acre.

## ANALYSIS

¶14 Lake Union Drydock argues that the DNR's decision to use an alternative upland tax parcel to calculate its rental rate was both contrary to law and arbitrary and capricious. The DNR counters that using an alternative parcel to calculate the rent complied with both former RCW 79.90.480(4) (2003) and former WAC 332-30-123(3) (1984) and, thus, was not contrary to law, or arbitrary or capricious.

¶15 When reviewing an administrative decision, an "appellate court stands in the same position as the superior court." *Wenatchee Sportsmen Ass'n v. Chelan County*, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). Thus, our review is de novo. *Leavitt v. Jefferson County*, 74 Wn. App. 668, 677, 875 P.2d 681 (1994). On appeal by writ of certiorari, our review is limited to whether the agency's decision was contrary to law or arbitrary and capricious. *Thomsen v. King County*, 39 Wn. App. 505, 514-15, 694 P.2d 40 (citing *Bay Indus., Inc. v. Jefferson County*, 33 Wn. App. 239, 240-41, 653 P.2d 1355 (1982)), *review denied*, 103 Wn.2d 1030 (1985).

## I. NOT CONTRARY TO LAW

¶16 We first address Lake Union Drydock's contention that the DNR's decision to use an alternate upland tax parcel[5] to calculate Lake Union Drydock's rent exceeded the DNR's statutory authority under former RCW 79.90.480(4) (2003) and violated its own rule, former WAC 332-30-123(3) (1984). In the context of administrative agency action, an act contrary to statutory authority is illegal. *Leschi Improvement Council v. Wash. State Highway Comm'n*, 84 Wn.2d 271, 279, 525 P.2d 774 (1974) (citing

---

[5] At oral argument, Lake Union Drydock noted it has no quarrel with the second alternate parcel that the DNR chose. Rather, Lake Union Drydock is challenging the DNR's resorting to *any* alternate parcel, arguing that the DNR exceeded its authority in using a value other than the county assessed value of its upland parcel for purposes of recalculating the rent for the DNR parcel.

*Mobil Oil Corp. v. Reynolds*, 202 Kan. 179, 446 P.2d 715 (1968)). An agency's decision is also contrary to law where the agency violates rules governing its exercise of discretion. *Pierce County Sheriff v. Civil Serv. Comm'n*, 98 Wn.2d 690, 694, 658 P.2d 648 (1983).

## A. Statutory Construction

■ ¶17 Where statutory language is plain and unambiguous, we derive the statute's meaning from the wording of the statute itself. *Rozner v. City of Bellevue*, 116 Wn.2d 342, 347, 804 P.2d 24 (1991). A statute that is clear on its face is not subject to judicial interpretation. *In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

■■ ¶18 Courts generally give " 'substantial weight . . . to the agency's view of the law if it falls within the agency's expertise in that special field of law.' " *Children's Hosp. & Med. Ctr. v. Wash. Dep't of Health*, 95 Wn. App. 858, 864, 975 P.2d 567 (1999) (alteration in original) (quoting *Purse Seine Vessel Owners Ass'n v. Wash. Dep't of Fish & Wildlife*, 92 Wn. App. 381, 389, 966 P.2d 928 (1998), *review denied*, 137 Wn.2d 1030 (1999)), *review denied*, 139 Wn.2d 1021 (2000). Where the legislature charges an agency with the administration and enforcement of an ambiguous statute, we give "the agency's interpretation great weight in determining legislative intent."[6] *Friends of Columbia Gorge, Inc. v. Forest Practices Appeals Bd.*, 129 Wn. App. 35, 47, 118 P.3d 354 (2005) (citing *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000)).

■■ ¶19 In addition, we must interpret a statute so that "[a]ll provisions should be harmonized whenever possible, and an interpretation which gives effect to both provisions is the preferred interpretation." *Emwright v.*

---

[6] Lake Union Drydock argues that if there is ambiguity in former WAC 332-30-123(3) (1984) and former RCW 79.90.480 (2003), we should not defer to the DNR's interpretation because it conflicts with the statute's intent. The DNR argues that if there is ambiguity, it is entitled to deference as the agency responsible for administering and enforcing the statute at issue.

*King County*, 96 Wn.2d 538, 543, 637 P.2d 656 (1981). And we must avoid interpretations that are unlikely or absurd. *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 321, 382 P.2d 639 (1963).

## B. Former RCW 79.90.480 (2003)

¶20 The legislature vested authority in DNR to oversee and to manage the State's aquatic lands for the public, including establishing lease agreements with private entities. Former RCW 79.90.245 (2004); former RCW 79.90.455 (1984). Former RCW 79.90.450 (1984) directs the DNR to "articulate a management philosophy to guide the exercise of the state's ownership interest and the exercise of the department's management authority, and to establish standards for determining equitable and predictable lease rates." Former RCW 79.90.480 (2003)[7] prescribed how the DNR should calculate rent when leasing State-owned aquatic lands as follows:

[A]nnual rent rates for the lease of state-owned aquatic lands for water-dependent uses shall be determined as follows:

(1)(a) The assessed land value . . . as determined by the county assessor, of the upland tax parcel used in conjunction with the leased area . . . .

. . . .

(4) If the upland parcel used in conjunction with the leased area is not assessed or has *an assessed value inconsistent with the purposes of the lease,* the nearest comparable upland parcel used for similar purposes shall be substituted and the lease payment determined in the same manner as provided in this section.

(Emphasis added.) This language in former RCW 79.90-.480(4) (2003) is unambiguous insofar as it provides that, for purposes of rent calculation, the DNR may substitute

---

[7] In 2005, the legislature recodified RCW 79.90.480 as RCW 79.105.240. But because Lake Union Drydock initiated this appeal before this recodification, we use the pre-2005 codification.

an alternate upland parcel for the leased parcel if the "assessed value [of the leased parcel is] *inconsistent* with the purposes of the lease." (Emphasis added.)

¶21 Although former RCW 79.90.480 (2003) does not specify when a parcel's assessed value is "inconsistent" with the purposes of the lease, the facts here clearly demonstrate such inconsistency without the need for further elaboration. The administrative record reveals that during the disputed rental period, from 2005 to 2006, the median rental rate for land along the shore of Lake Union was $26,512.92 per acre. Calculating an annual rental rate based on the county's assessed value of the land, greatly diminished because of heavy contamination, would have resulted in a nominal rent of $6 per year for 2.8 acres of property along Lake Union's shoreline. Such a de minimus rent is clearly inconsistent[8] with Lake Union Drydock's lease of the property for operation of a commercial marine repair and construction business. Thus, the DNR acted according to the statute when it chose, according to the administrative law judge, the "most comparable alternative parcel"[9] for purposes of calculating a more realistic rental rate for Lake Union Drydock's lease of the submerged DNR parcel.[10]

## C. Former WAC 332-30-123 (1984)

¶22 The legislature directed the DNR to adopt an administrative rule to define when "an abutting upland parcel has

---

[8] *Webster's New College Dictionary* defines "inconsistent" as "1. Not consistent . . . , b. Lacking in correct logical relation . . . , c. Not in agreement or harmony." WEBSTER'S NEW COLLEGE DICTIONARY 561 (2d ed. 1999).

[9] Although the statute says "nearest" alternative parcel, former RCW 79.90-.480(4) (2003), the administrative law judge said that he was choosing the "most comparable alternative parcel." This distinction is of no consequence to this appeal: At oral argument, Lake Union Drydock conceded that it had no objection to the upland parcel DNR finally selected as an alternative. Rather, Lake Union Drydock objected to and appeals only DNR's original decision to use any alternative parcel at all, regardless of proximity or comparability.

[10] Moreover, as the trial court noted, on six other occasions where the county had assessed land at a nominal value because of heavy contamination, the DNR used an alternative upland parcel to calculate rents for water-dependent tenants, just as it did here.

been inappropriately assessed and for determining the nearest comparable upland parcel used for water-dependent uses." Former RCW 79.90.540 (1984). Following this directive, the DNR administratively adopted former WAC 332-30-123(3) (1984), listing six situations in which an alternative upland tax parcel's assessed value "will be considered inconsistent" with the purposes of the water-dependent-use lease for purposes of calculating rent. Former WAC 332-30--123(3) (1984)[11] provided:

> [T]he following situations will be considered inconsistent . . .
>
> (a) The upland tax parcel is not assessed. . . . ;
>
> (b) Official date of assessment is more than four years old. . . . ;
>
> (c) The "assessment" results from a special tax classification not reflecting fair market value. Examples include classifications under: State-regulated utilities (chapter 84.12 RCW), Reforestation lands (chapter 84.28 RCW), Timber and forest lands (chapter 84.33 RCW), and Open space (chapter 84.34 RCW). This inconsistency may be corrected by substituting the full value for the parcel if such value is part of the assessment records;
>
> (d) If the assessed valuation of the upland tax parcel to be used is under appeal as a matter of record before any county or state agency . . . ;
>
> (e) The majority of the upland tax parcel area is not used for a water-dependent purpose. . . . ;
>
> (f) The size of the upland tax parcel in acres or square feet is not known or its small size results in a nominal valuation.

---

[11] On November 8, 2005, the DNR amended former WAC 332-30-123(3) (1984) to specify that the list of six situations was nonexclusive. It also added a seventh situation to the list, expressly covering contamination situations:

> The assessed value reflects the presence of contamination on the uplands, when the contamination on the uplands does not impair the use of the leasehold. This inconsistency may be corrected by substituting the full value for the upland parcel as if there were no contamination, if such value is part of the assessment records.

WAC 332-30-123(3)(g). But because Lake Union Drydock filed its original appeal before this amendment, we use the pre-2005 amendment version, which lacks this seventh situation as well as the express notation that the list is not exclusive.

(Emphasis added.) Both parties agree that the county tax assessor's contamination-based devaluation of the DNR property leased to Lake Union Drydock does not fall within any of these six enumerated situations in former WAC 332-30-123(3)(a)-(f) (1984).

¶23 Thus, Lake Union Drydock argues that the DNR acted contrary to law because (1) the six situations in former WAC 332-30-123(3) (1984) comprise an exclusive list and (2) therefore, the DNR acted outside the bounds of its statutory authority when it substituted the value of an upland parcel based on a situation not included in the list, namely that the contamination-discounted assessed value of Lake Union Drydock's upland property was "nominal." The DNR counters that (1) former WAC 332-30-123(3) (1984)'s list of situations are nonexclusive and (2) thus, the DNR acted within the scope of its rule, and its legislatively delegated authority, when it used an alternate upland parcel for calculating Lake Union Drydock's rental rate because the assessed value of Lake Union Drydock's upland parcel was "inconsistent" with the purpose of the lease.

¶24 In light of the expanded, expressly nonexclusive list in the 2005-amended version of WAC 332-30-123(3),[12] we do not address here whether the six situations in the pre-2005 version comprise an exclusive or a nonexclusive list of examples such that other nonlisted situations may also be considered "inconsistent" with the purposes of the lease. Instead, we begin with Lake Union Drydock's premise that the DNR's former WAC 332-30-123(3) (1984) list is exclusive. Assuming, without holding, that the pre-2005 list was exclusive, then former WAC 332-30-123(3) (1984)

---

[12] The 2005-amended version of WAC 332-30-123(3) expressly provides:

[T]he following situations are examples, but are not an exclusive list, of what the department will consider inconsistent and shall either require adjustment as specified, or selection of an alternative upland tax parcel under subsection (4) of this section.

The DNR's 2005 amendment to former WAC 332-30-123(3) (1984) also added a seventh situation: An "assessed value [that] reflects the presence of contamination on the uplands, when the contamination on the uplands does not impair the use of the leasehold," will be considered "inconsistent." WAC 332-30-123(3)(g).

would itself have been contrary to and, therefore, an improper implementation of the Legislature's directive in former RCW 79.90.480(4) (2003), namely that the DNR must substitute an upland parcel to use for rent calculation if "the leased area . . . has an assessed value inconsistent with the purposes of the lease." Because the assessed "nominal" value of Lake Union Drydock's leased parcel is blatantly inconsistent with the purposes of its lease, namely Lake Union Drydock's commercial operation of a shipyard, former RCW 79.90.480(4) (2003) standing alone required the DNR to substitute an upland parcel for use in recalculating Lake Union Drydock's rent. Reading this legislative directive together with the DNR's rule, it follows that the former WAC 332-30-123(3) (1984) list for recalculating rent cannot be said to exclude a situation like the one here, where the upland parcel's value is inconsistent with the purposes of the lease.

¶25 We reject Lake Union Drydock's reading of former WAC 332-30-123(3) (1984), as providing an exclusive list, because it contravenes both the express language of former RCW 79.90.480 (2003) and the legislature's delegation of rule-making authority to the DNR. Instead, we look to the plain meaning of the statute: former RCW 79.90.480(4) (2003) provides that the DNR must use an alternative upland parcel to calculate rent for leased land if the assessed value of the lessee's upland parcel is "inconsistent with the purposes of the lease." Although the rule does not specifically include "devaluation due to contamination" in its list, we note that an annual rental rate of $6.00 for 2.8 acres of property along Lake Union's shoreline is blatantly inconsistent[13] with the property's lease for operation of a commercial marine repair and construction business; therefore, the DNR needed no further directive other than the plain language of the statute to require it to resort to some other method for recalculating Lake Union Drydock's rent of the

---

[13] *Webster's New College Dictionary* defines "inconsistent" as "1. Not consistent . . . b. Lacking in correct logical relation . . . c. Not in agreement or harmony." WEBSTER'S NEW COLLEGE DICTIONARY 561 (2d ed. 1999).

submerged DNR parcel after the county drastically discounted the assessed value of its upland parcel from $8.57 million to a mere $1,000.00.

¶26 That other similarly situated marinas on Lake Union paid a median annual rental rate of $19,340.63 per acre in 2005 contrasts starkly with Lake Union Drydock's proposed annual rental rate of $1.93 per acre, based on the county's contamination-based reassessment of its upland parcel. Lake Union Drydock's proposed rental rate is absurdly incongruent, particularly where the contamination that caused the discounted reassessment of its upland parcel does not negatively impact the operation of its shipyard business. *See Alderwood Water Dist.*, 62 Wn.2d at 321 ("[A] statute should be construed as a whole in order to ascertain legislative purpose, and thus avoid unlikely, strained, or absurd consequences.").

■ ■ ¶27 Furthermore, the law prohibits any State agency, including the DNR, from giving away public property for private use. According to the public trust doctrine, the State holds state shorelines and waters in trust for the people of Washington, and " '[t]he state can no more convey or give away this jus publicum interest than it can abdicate its police powers in the administration of government and the preservation of the peace.' " *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 696, 169 P.3d 14 (2007) (internal quotation marks omitted) (quoting *Caminiti v. Boyle*, 107 Wn.2d 662, 669, 732 P.2d 989 (1987), *cert. denied*, 484 U.S. 1008 (1988)); Wash. Const. art. XVII, § 1. To implement this public trust, the legislature expressly delegated authority to the DNR to manage state-owned aquatic lands for "the benefit of the public [using the] revenues derived from leases . . . to enhance . . . public benefits associated with the aquatic lands of the state." Former RCW 79.90.450 (1984). If the DNR were to accept Lake Union Drydock's proposed annual rental rate of $1.93 per acre, a commercial business would then occupy state-

owned land virtually rent-free, a result that clearly violates public policy and our state Constitution.[14]

¶28 We hold, therefore, that the DNR acted within the scope of its statutory authority and consistently with the legislature's statutory intent to establish predictable, fair rents, when the DNR (1) determined that Lake Union Drydock's upland property's assessed value was clearly inconsistent with the purpose of its lease and (2) substituted the assessed value of an alternative upland parcel to calculate Lake Union Drydock's rental rate for the leased DNR land.

## II. NOT ARBITRARY AND CAPRICIOUS

¶29 Lake Union Drydock fails to persuade us to put aside traditional deference to the administering agency's interpretation and application of its rules. In light of our holding, we need not address Lake Union Drydock's additional argument that the DNR's use of an alternative upland parcel to calculate rental rate on the leased property was arbitrary and capricious based on internal DNR communications in which employees interpreted the former WAC 332-30-123(3) (1984) situations as exclusive.

¶30 Affirmed.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

---

[14] The legislature allows the DNR to grant occupancy of state-owned aquatic lands "without charge [only] if the aquatic lands and improvements are available to the general public . . . and are not managed to produce a profit for the operator or a concessionaire." Former RCW 79.90.470(1) (2002).