# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

WASHINGTON STATE HOUSING )
FINANCE COMMISSION, a public body )
Corporate and politic of the State of )
Washington, )
                Respondent, )
                      )
               v. )
                      )
NATIONAL HOMEBUYERS FUND, )
INC., f/k/a Homebuyers Fund, )
Incorporated, a California nonprofit )
corporation; GOLDEN STATE FINANCE )
AUTHORITY, f/k/a California Home )
Finance Authority, f/k/a California Rural )
Home Mortgage Finance Authority, a )
California joint powers authority; RURAL )
COUNTY REPRESENTATIVES OF )
CALIFORNIA, f/k/a Regional Council of )
Rural Counties, f/k/a Mountain Counties )
Water Resources Association, a )
California nonprofit corporation, )
                      )
             Appellants. )

No. 76510-8-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: June 11, 2018

2018 JUN 11 AM 10: 58
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

TRICKEY, J. — The Washington State Housing Finance Commission (WSHFC) is a legislatively created agency that promotes affordable housing in Washington. National Homebuyers Fund (NHF) is a California nonprofit public benefit corporation that several California counties formed to offer home financing assistance nationwide. WSHFC sued for declaratory and injunctive relief against NHF's down payment assistance services in Washington.

Following cross motions for summary judgment, the trial court granted summary judgment in favor of WSHFC and declared that NHF's Washington

activities were prohibited by law. Because WSHFC lacks standing to bring this lawsuit, we conclude that the trial court erred in granting summary judgment for WSHFC. Therefore, we reverse and remand for dismissal of WSHFC's claims.

## FACTS

WSHFC is a Washington administrative agency established under RCW 43.180.040 to increase the supply of affordable housing in Washington. The legislature created WSHFC with the express purpose of acting as "a financial conduit which, without using public funds or lending the credit of the state or local government, can issue nonrecourse revenue bonds and participate in federal, state, and local housing programs and thereby make additional funds available at affordable rates to help provide housing throughout the state." RCW 43.180.010. WSHFC is an authorized government entity for the purpose of federal housing programs, including the federal mortgage insurance program. RCW 43.180.050(1)(e).

Under the federal mortgage insurance program, the Federal Housing Administration (FHA) of the United States Department of Housing and Urban Development (HUD) provides mortgage insurance on loans made by FHA approved lenders. Federal mortgage insurance protects lenders against loss and mitigates risk. To qualify for mortgage insurance, loans must meet FHA established requirements, including a minimum 3.5 percent down payment at the time of purchase. 12 U.S.C. § 1709(b)(9)(A). This down payment requirement decreases the risk of default and promotes responsible lending.

2

One of WSHFC's programs promotes affordable housing by offering down payment assistance programs in order to help purchasers qualify for mortgage insurance. WSHFC is authorized to make loans to homeowners for down payment assistance. RCW 43.180.050(1)(d). These are secondary loans with low or no interest and deferred payment until the primary mortgage is paid off or the home is sold or refinanced. WSHFC also prescreens borrowers, provides education and counseling, and prevents excessive lender fees.

WSHFC generates revenue from this down payment assistance program by selling the underlying primary mortgage loans as securities. Participating lenders originate the loans, which are then delivered to WSHFC through service providers. The primary loans are pooled and sold as securities with all loans monitored and administered over time. WSHFC reinvests revenue from the security sales back into its programs to benefit the Washington housing market. WSHFC is self-funding and continually uses its revenue to increase affordable housing in Washington.

In 2014, WSHFC encountered competition from NHF, a new entity providing down payment assistance in Washington. NHF is a California nonprofit public benefit corporation that was formed by two California entities, Rural County Representatives of California (RCRC) and Golden State Finance Authority (GSFA). NHF was created with the express purpose of providing home financing services outside of California.

RCRC is a California nonprofit mutual benefit corporation founded in 1972 by several rural counties in California. RCRC advocates for rural issues, promotes

a greater understanding of rural counties among policy makers, and aims to improve the ability of small, rural California county governments to provide services.

In 1993, RCRC's member counties created GSFA to offer homeownership assistance and mortgage financing in its member counties. GSFA is a joint-powers authority that is limited to operating in California. GSFA offers down payment assistance for federally insured mortgages only within its territory in California.

In 2002, RCRC and GSFA founded NHF[1] as a separate, nonprofit public benefit corporation to offer mortgage assistance services outside of California. NHF has its own articles of incorporation and bylaws. RCRC, GSFA, and NHF share the same primary address and several officers. They also have a unified business plan, with NHF and GSFA considered to be affiliates of RCRC. NHF does not have its own employees, and instead contracts for RCRC to provide services.

NHF entered the Washington market in 2014. NHF assists with down payments to low and moderate income homebuyers by providing them with non-repayable gifts of up to 5 percent of the mortgage loan. Participating lenders originate individual mortgages with NHF supplying the gift-based down payment assistance to the homebuyer. These individual mortgages are pooled into mortgage-backed securities and sold to NHF. NHF then sells these mortgage-backed securities on the open market to investors. NHF uses the revenue from these sales to continue funding its down payment assistance program and

---

[1] NHF was originally incorporated under the name Homebuyer's Fund, Incorporated. By February 2003, the name had been changed to National Homebuyer's Fund, Inc.

transfers excess profits to RCRC in California. NHF does not require repayment of the down payment gift funds.

Upon NHF's entry into the Washington market, WSHFC expressed concern about the competition. WSHFC looked for ways to curtail NHF's entry into and activities within Washington. These included communicating with HUD about the legality of NHF's business, and discussing shutting down NHF's loans with NHF's mortgage partners.

In May 2015, WSHFC filed suit against RCRC, GSFA, and NHF. WSHFC claimed that RCRC, GSFA, and NHF did not have the authority to provide homeownership financing services outside of California. WSHFC requested a declaratory judgment that NHF's ongoing activities were unauthorized and could not continue. WSHFC also sought an injunction prohibiting NHF from providing homeownership financing services in Washington.

RCRC, GSFA, and NHF (collectively, NHF) filed a motion to dismiss the case for failure to state a claim and for lack of personal jurisdiction over GSFA and RCRC. After a hearing, the trial court denied NHF's motion to dismiss. WSHFC and NHF then filed cross-motions for summary judgment. The trial court denied both motions and set the matter for trial. WSHFC moved for reconsideration. On reconsideration, the trial court granted summary judgment and issued a declaratory judgment in favor of WSHFC. The trial court declared that NHF's activities were prohibited by law.

NHF appeals.[2]

## ANALYSIS

NHF argues that the trial court erred in granting summary judgment in favor of WSHFC because WSHFC did not have standing to bring this suit. Specifically, NHF claims that WSHFC has no rights or legally protected interests at stake as required for standing. We agree.

WSHFC sought declaratory judgment and injunctive relief under the Uniform Declaratory Judgments Act (UDJA), chapter 7.24 RCW. To have standing under the UDJA, a party must establish that its "rights, status or other legal relations are affected by a statute." RCW 7.24.020. For the purposes of establishing standing under the UDJA, the trial court applies a two-part test. Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake, 150 Wn.2d 791, 802, 83 P.3d 419 (2004). The first part of the test asks "whether the interest sought to be protected is 'arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" Grant County Fire, 150 Wn.2d at 802 (internal quotation marks omitted) (quoting Save a Valuable Env't v. City of Bothell, 89 Wn.2d 862, 866, 576 P.2d 401 (1978)). A law's zone of interests is ascertained by examining the operation of the statute and the statute's general

---

[2] After the parties submitted their briefing to this court, WSHFC made a motion to file a supplemental brief or to strike portions of NHF's reply brief. WSHFC alleged that NHF had introduced new arguments in its reply brief. A commissioner of this court referred the issue to the panel for consideration with the merits. We have examined the briefing and conclude that NHF's reply brief does not introduce new arguments. Instead, NHF clarified its theory on standing and rebutted WSHFC's argument. This is appropriate content for a reply brief. See New Cingular Wireless PCS, LLC v. City of Clyde Hill, 187 Wn. App. 210, 219 n.5, 221 n.6, 349 P.3d 53 (2015), aff'd, 185 Wn.2d 594, 374 P.3d 151 (2016). Therefore, we deny the motion to supplement or strike and consider the entirety of NHF's reply brief.

purpose. <u>Five Corners Family Farmers v. State</u>, 173 Wn.2d 296, 304-05, 268 P.3d 892 (2011).

The second part of the test considers whether the challenged action has caused an "'injury in fact'" to the party seeking relief. <u>Grant County Fire</u>, 150 Wn.2d at 802 (internal quotation marks omitted) (quoting <u>Save a Valuable Env't</u>, 89 Wn.2d at 866). The harm must be personal to the party and substantial, rather than speculative or abstract. <u>Grant County Fire</u>, 150 Wn.2d at 802. The party seeking to establish standing must satisfy both parts of the test. <u>Grant County Fire</u>, 150 Wn.2d at 802.

The trial court's determination that a party has standing is a legal question that is reviewed de novo. <u>City of Snoqualmie v. King County Exec. Dow Constantine</u>, 187 Wn.2d 289, 296, 386 P.2d 279 (2016).

Here, WSHFC argues that it falls into the zone of interests of both Washington and federal law as an authorized state entity operating within the federal mortgage insurance program in Washington. The Washington legislature created WSHFC under RCW 43.180.040. WSHFC is "an instrumentality of the state" and "a financial conduit" for participation in federal, state, and local housing programs. RCW 43.180.040(1); RCW 43.180.010. But the statutory scheme which establishes the WSHFC does not include enforcement power. Thus, WSHFC does not have statutory authority to regulate other entities who participate in the housing programs.

Furthermore, under RCW 43.180.010, WSHFC is "*a financial conduit*" for housing programs, not *the* or *the sole* financial conduit.[3] Therefore, the statutory scheme does not establish WSHFC as the only participant in federal, state, and local housing programs in Washington. WSHFC has conceded that its power is not exclusive, with at least 25 other organizations providing down payment assistance in Washington. Therefore, WSHFC is only one of the participants in housing finance assistance and does not have a monopoly interest to protect.

WSHFC also claims that it falls within the zone of interests for federal law and has an implied right of action because it is an authorized state entity. "[C]ourts . . . recognize an implied cause of action under a statute which provides protection to a specific class of persons but creates no remedy." Bennett v. Hardy, 113 Wn.2d 912, 920, 784 P.2d 507 (1990). But HUD has a Mortgagee Review Board (Board) to enforce HUD and FHA policies. 12 U.S.C. § 1708(c). The Board can take action against mortgagees found to be violating FHA requirements. 12 U.S.C. § 1708(c)(1). Therefore, an entity exists to enforce HUD rules and an implied right of action is not necessary.

WSHFC effectively asserts standing based on the merits of the lawsuit. In its underlying complaint, WSHFC requested declaratory judgment that NHF's actions were unauthorized in Washington. Thus, WSHFC simultaneously asserts standing because NHF's activity was unauthorized, while requesting that the court declare NHF's activity to be unauthorized. In this approach, WSHFC cannot establish that it is in the "zone of interests" for the statute without reaching the

---

[3] RCW 43.180.010 (emphasis added).

merits of its claim. This is unpersuasive as standing must exist at the outset of the case. See To-Ro Trade Shows v. Collins, 144 Wn.2d 403, 411, 27 P.3d 1149 (2001). Therefore, WSHFC's claims that NHF is an unauthorized entity in Washington do not provide standing to bring this lawsuit.[4]

In addition to being outside the zone of interests, WSHFC fails to demonstrate injury in fact to support standing. WSHFC expressed concerns that NHF's competition harms its ability to self-fund its housing assistance programs. WSHFC noted that NHF sold thousands of loans originating in Washington during 2014 and 2015 that amounted to over $688,000 and millions of dollars in revenue. Given the volume of business, WSHFC considered the diversion of revenue out of Washington to be "a big concern."[5]

---

[4] WSHFC raised many merit-based claims for standing. For example, WSHFC claims that WSHFC has standing as an authorized government entity, while NHF improperly holds itself out as a government entity. But NHF does not purport to act as a government entity in Washington. By virtue of its status as an Internal Revenue Service Section 115 entity, HUD considers NHF an "instrumentality of government" for the purposes of secondary financing of home loans. Appellant's Opening Br. at App. 3-4 (Mortgagee Letter 2012-24). This "instrumentality of government" status only establishes that NHF can participate in the secondary financing market without HUD preapproval. While NHF has confused the issue by referring to itself as an instrumentality of government in advertising and lenders, NHF does not claim to be a government entity.

WSHFC also claims that NHF is not authorized to assert status as a government entity to provide duplicative services. Washington has "a public policy against duplication of public functions, and that such duplication is normally not permissible unless it is provided for in some manner by statute." Alderwood Water Dist. v. Pope & Talbot, Inc., 62 Wn.2d 319, 321, 382 P.2d 639 (1963). But the case law cited by WSHFC in support of this argument applies to public functions performed by public entities. See Alderwood, 62 Wn.2d at 322 (two water districts cannot overlap); Skagit County Public Hosp. Dist. No. 304 v. Skagit County Pub. Hosp. Dist. No. 1, 177 Wn.2d 718, 723-31, 305 P.3d 1079 (2013) (a rural public hospital district could not invade the territory of another rural public hospital district without its permission). Unlike water or public hospital districts, NHF is a private corporation rather than a public entity. WSHF does not demonstrate that Washington seeks to prevent overlap between private and public entities in performing public functions.

[5] Clerk's Papers (CP) at 827.

Despite this concern, WSHFC has not provided evidence in support of economic loss. While NHF admits to having made over $688,000 in loans in Washington, WSHFC has not shown that those loans would have otherwise been made by WSHFC rather than one of the other financing entities in Washington. In fact, a June 2016 deposition revealed that WSHFC had experienced very little loss of market share due to NHF's entrance into Washington. The director of the home ownership division of WSHFC testified, "[W]e didn't lose that much market share. [O]ur volumes have still continued to grow consistently with or without NHF present."[6] Without specific evidence of economic loss, WSHFC's claims of injury are merely speculative and do not satisfy the standing requirement of injury in fact. See Grant County Fire, 150 Wn.2d at 802.

We conclude that WSHFC did not have standing to bring this lawsuit against NHF. WSHFC has not shown that it falls within the zone of interests or suffered an injury in fact. Therefore, we reverse and remand for dismissal of WSHFC's claims.[7]

Trickey, J

WE CONCUR:

Spearman, J.

Dwyer, J.

---

[6] CP at 827.
[7] In light of this decision, we will not reach the merits of NHF's additional claims.