**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
OCTOBER 15, 2020

*Stephe, C. J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
OCTOBER 15, 2020

*Susan L Carlson*

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RONALD WASTEWATER DISTRICT, a Washington municipal corporation, | ) ) ) | No. 97599-0 |
| Petitioner, | ) ) ) | |
| v. | ) ) | En Banc |
| OLYMPIC VIEW WATER AND SEWER DISTRICT, a Washington municipal corporation; TOWN OF WOODWAY, a Washington municipal corporation; and SNOHOMISH COUNTY, a Washington municipal corporation, | ) ) ) ) ) ) ) ) | |
| Respondents, | ) ) | |
| KING COUNTY, a Washington municipal corporation, | ) ) ) | |
| Petitioner, | ) ) | |
| CITY OF SHORELINE, a Washington municipal corporation, | ) ) ) | |
| Defendant. | ) ) | Filed: October 15, 2020 |

JOHNSON, J.—This case involves a dispute over control of sewerage service

to Point Wells. Point Wells is located just north of the King County border, within

the boundaries of Snohomish County and Olympic View Water and Sewer District (Olympic). We must determine the effect of a 1985 superior court order (1985 Order), which purports to annex the Point Wells service area from King County to Ronald Wastewater District (Ronald). Resolution of this issue entails interpretation of former Title 56 RCW (1985) and former RCW 36.94.410-.440 (1985) to determine whether the 1985 court had authority to approve the transfer and annexation. The trial court held that the 1985 Order annexed Point Wells to Ronald. The Court of Appeals reversed, holding that King County could not transfer annexation rights that it did not have. We affirm the Court of Appeals.

## FACTS

This dispute focuses on two specific properties within Point Wells, the former Standard Oil petroleum plant and Daniel Briggs's residential property. Both are located within Snohomish County and Olympic. In addition, the Briggs property is located within the town of Woodway. For the purposes of this case, references to Point Wells include both properties, unless otherwise noted.

The sewer system subject to this dispute is known as the Richmond Beach sewer system (RBSS). Initially, RBSS was operated by King County Sewer District No. 3 (KCSD #3) and exclusively served King County. In 1970 and 1971, KCSD #3 contracted with Standard Oil to construct a lift station and provide sewer service to Standard's petroleum plant located within Point Wells. King County then

requested permission from Olympic to provide water service to the Point Wells area. Olympic replied with "no objections to permitting the Department of Public Works, King County, to serve the lift station . . . on Richmond Beach Drive, within our service area." Clerk's Papers (CP) at 912. In 1972, KCSD #3 also contracted with the property owners to provide sewer service to one lot on the Briggs property. Subsequently, Ronald contracted directly with the Briggs property owner to provide service to the additional lots.

In the 1980s, King County sought to divest its sewer operations and transfer them to local water and sewer districts. To facilitate its divestment plan, King County lobbied for the creation of the transfer annexation process, eventually codified as former RCW 36.94.410-.440. LAWS OF 1984, ch. 147, § 1.

King County initiated the transfer of RBSS to Ronald per the newly established method under former RCW 36.94.410-.440. In doing so, first, KCSD #3 properly transferred RBSS to King County. This transfer is not in dispute. Second, King County proceeded to transfer RBSS to Ronald. King County obtained permission from Chevron, the new property owner of the Point Wells petroleum plant. King County mailed notices and held public hearings for its ratepayers concerning the transfer to Ronald. Ronald and King County also adopted formal plans to provide service to the Point Wells area. King County also passed an ordinance authorizing the transfer.

3

King County and Ronald then executed a transfer agreement transferring RBSS and the "area served," which it defined as "those parcels of property within the boundaries described in Addendum A." CP at 8029. The addendum contained a legal description of Point Wells and expressly recognized that the area was within Snohomish County. The agreement also identified the transfer of contractual obligations. It stated, "The County has certain contractual rights and obligations in connection with the system. These rights and obligations arise under the agreements which are attached as Addenda C and D, and incorporated herein by this reference." CP at 1092. Attached as addenda were Chevron's consent to the transfer and KCSD #3's contractual agreement with Standard regarding ownership of the lift station and service over the petroleum plant area. The parties then filed a petition seeking the superior court's approval of the transfer.

After holding a hearing, the superior court issued the 1985 Order, which is the subject of our review. The order approved the transfer of the RBSS from King County to Ronald. The court found that the "transfer agreement is legally correct and that there are no owners of related indebtedness to be protected." CP at 1082. It also stated:

> 2. The transfer of the System is to be accomplished in accordance with the transfer agreement effective as of January 1, 1986.
> 3. As provided in the transfer agreement, the area served by the System shall be annexed to and become a part of the District on the effective date of the transfer.

CP at 1083. Ronald has exclusively served the Point Wells area since the transfer became effective in January 1986.

In 2009, the Snohomish County Council redesignated Point Wells as an urban center. The current property owner, BSRE Point Wells LP, began planning a large mixed-use urban development for the area. In 2010, Ronald incorporated the proposed development in its sewer plan. Snohomish County approved Ronald's 2010 sewer plan and incorporated it into its Growth Management Act (GMA), ch. 36.70A RCW, land use plan. In 2014, the city of Shoreline, located within King County, sought to assume Ronald and its service area. Snohomish County and Olympic raised questions over Ronald's service of Point Wells in proceedings with the Boundary Review Board (BRB). Olympic then proposed a sewer plan amendment to build new infrastructure and provide service to Point Wells. In 2016, the Snohomish County Council approved Olympic's amendment.

Ronald then filed this current action, in part, seeking a declaratory judgment to confirm its corporate boundary. Ronald claims that its corporate boundary includes Point Wells, based on the 1985 Order's valid annexation of the Point Wells service area to Ronald's district.[1] Olympic, Woodway, and Snohomish argued that

---

[1] Ronald also sought review of Snohomish County's action with the Growth Management Hearing Board (GMHB). CP at 1543-78. The GMHB found that the approval of Olympic's plan conflicted with its existing plan recognizing Ronald as the Point Wells service provider and determined that it was a de facto amendment to Snohomish County's comprehensive plan, violating the GMA requirements. This issue is not before us.

the 1985 Order was erroneous and invalid. Both sets of parties filed cross motions for summary judgment. The superior court granted Ronald's partial motion for summary judgment and declared that the 1985 Order lawfully transferred and annexed the area to Ronald. The court also determined that the 1985 Order was valid and binding as a judgment in rem.

Olympic and Woodway appealed. The Court of Appeals reversed, determining that the 1985 Order was erroneous and void for lack of subject matter jurisdiction. The Court of Appeals interpreted former RCW 36.94.420 (1985) and determined that the "area served" subject to transfer and annexation does not include areas beyond the transferring county's geographic boundary.

## ANALYSIS

We review summary judgment orders de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). It is undisputed that the service territory within King County's boundary was validly transferred and annexed to Ronald. The issue is whether the Point Wells area was properly annexed; that is, who—Ronald or Olympic—has the right to provide sewer service to the Point Wells area. Point Wells has received sewer service from King County and Ronald but lies within the corporate boundaries of Snohomish County, Olympic, and Woodway. Olympic, Snohomish, and Woodway argue that to the extent that the order purports to annex Point Wells to Ronald, it is erroneous because King County could not transfer what

6

it did not have. Ronald and King County ask us to uphold the 1985 Order based on the "first in time" principle and the authorization of sewer districts to operate across jurisdictions. We hold that to the extent that the 1985 Order annexed Point Wells to Ronald it is void because under the limited authority of former Title 56 RCW and former RCW 36.94.410-.440, the court lacked subject matter and personal jurisdiction to adjudicate such an annexation.

I.      Sewer district authority–former Title 56 RCW

First, we analyze the provisions within former Title 56 RCW to determine whether and when districts generally can annex territory within another jurisdiction. Sewer districts like Ronald and Olympic are governed by former Title 56 RCW and are authorized to provide sewer service and perform functions related to such operation within their service area. Former RCW 56.04.020 (1974); former RCW 56.20.015 (1983); former RCW 56.08.010 (1985). Sewer districts may also provide sewer service to properties beyond their geographic boundaries. Former RCW 56.08.060 (1981).

Notably, sewer districts have the authority to serve multiple counties. Former RCW 56.04.020 (sewer districts "may include within their boundaries portions or all of one or more counties, incorporated cities, or towns or other political subdivisions"). But when a sewer district includes territory in more than one county, approval is needed from the county officer or board. Former RCW

56.02.055 (1982). Sewer districts may also serve areas within other districts—by

agreement.

> A sewer district may enter into contracts with any county, city, town, sewer district, . . . [and may] exercise sewer district powers . . . in areas within or without the limits of the district: *Provided*, That if any such area is located within another existing district duly authorized to exercise sewer district powers in such area, then sewer service may not be so provided by contract or otherwise *without the consent by resolution of the board of commissioners of such other district*.

Former RCW 56.08.060 (emphasis added).

Consistent with these statutes is the underlying policy that absent permission,

districts may not infringe on areas within another district, which we recognized in

*Alderwood Water District v. Pope & Talbot, Inc.*, 62 Wn.2d 319, 322, 382 P.2d 639

(1963). In *Alderwood*, we interpreted former RCW 57.08.010 (1959) (permitting

water districts to serve areas outside their own boundaries) and former RCW

57.04.070 (1929) ("'no lesser water district shall ever be created within the limits in

whole or in part of any water district'"). 62 Wn.2d at 321-22. We reasoned that a

water district could not serve areas that were within another district unless the area

was first withdrawn from the original district or the original district refused to serve

it. *Alderwood*, 62 Wn.2d at 322-23. We noted that water districts could provide

services unilaterally only to areas outside its boundaries that were not within

another district.

Here, the language of the applicable sewer district statutes parallels the language of the statute interpreted in *Alderwood*, former RCW 57.04.070. Sewer districts may provide service in areas within another district with the permission of the original district. Former RCW 56.08.060. Additionally, "no lesser sewer district shall ever be created within the limits in whole or in part of any other sewer district, except as provided in RCW 56.36.060 and 36.94.420." Former RCW 56.04.070 (1985).

Ronald asserts that *Alderwood* does not control under these circumstances because the transfer annexation process of former RCW 36.94.420 is exempt from this general prohibition, indicating that a district may unilaterally annex territory within another district. However, as the Court of Appeals reasoned, former RCW 56.08.060 mandates that overlapping service "by contract or otherwise" is permitted only with the consent of the original district. Altogether these provisions establish that if a district cannot unilaterally *serve* an area within another district without permission, it follows that a district cannot unilaterally *annex* an area within another district without permission. Ronald could not have unilaterally annexed Point Wells because it was already within Olympic's boundary, and neither Olympic nor Snohomish County consented to Ronald's annexation of Point Wells.

Where a sewer district seeks to annex a territory within another district, the territory must first be withdrawn from the original district. Former RCW 56.28.010

(1953). Once it is withdrawn, the registered voters within the territory can petition for annexation into another district. Former RCW 56.24.070 (1985). The annexation will be approved either by the county legislative authority or by election. Former RCW 56.24.140 (1967); former RCW 56.24.090 (1967). An annexation that altered the corporate boundaries of a district would also be subject to review by the BRB. Former RCW 56.02.055-.070 (1982). In this case, this process was not followed, and Olympic and Snohomish County were not involved in the annexation process.

In particular, Olympic did not consent to the annexation of Point Wells. Within their borders, sewer districts possess the *primary authority* to operate and regulate a sewer system. Former RCW 56.04.020; former RCW 36.94.170 (1971). A district may relinquish its authority only by written consent or a comprehensive plan amendment and approval by the BRB. Former RCW 36.94.170. Here, in response to the Seattle Water District's request to provide water service to Point Wells, Olympic gave King County permission to serve the area permissively by contract. At most, even if this permission extended beyond water service and included the provision of sewer service, it did not constitute a relinquishment of Olympic's primary sewerage authority. Without Olympic's relinquishment, Ronald and King County had no right to unilaterally annex Point Wells.

II. Annexation under former RCW 36.94.410-.440

The remaining inquiry is whether the unique transfer annexation process under former RCW 36.94.410-.440 would otherwise permit the unilateral annexation of another district's territory. The meaning of a statute is also a question of law reviewed de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-12, 43 P.3d 4 (2002). Our ultimate objective is to ascertain and carry out the legislature's intent. Plain meaning is discerned from the ordinary meaning of the language, the statute's context, related provisions, and the statutory scheme as a whole. If the plain meaning is unambiguous, we give it effect. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

Former RCW 36.94.410-.440 uniquely governs a sewer system transfer from a county to a sewer district. Former RCW 36.94.410 (1984) states:

> A system of sewerage, system of water or combined water and sewerage systems operated by a county under the authority of this chapter may be transferred from that county to a water or sewer district *in the same manner* as is provided for the transfer of those functions from a water or sewer district to a county in RCW 36.94.310 through RCW 36.94.340.

(Emphasis added.) The procedure follows the process of former RCW 36.94.310-.340 (1975), which governs a transfer from a sewer district to a county. The process is initiated by the adoption of resolutions or ordinances authorizing the transfer. RCW 36.94.330. Then the district and county execute a written transfer agreement, outlining the terms of the transfer. Former RCW 36.94.340 (1975). Finally, a

11

petition is filed, asking the superior court to "approve and direct the proposed transfer of property." Former RCW 36.94.340.

Uniquely, the transfer from a county to a sewer district, under former RCW 36.94.410, goes a step further and may culminate in annexation. Upon the superior court's approval and "[i]f so provided in the transfer agreement, the *area served by the system* shall, upon completion of the transfer, be deemed *annexed to and become a part of* the water or sewer district acquiring the system." Former RCW 36.94.420 (emphasis added).

The crux of the dispute is whether the subject of annexation, the "area served," may include territory that is outside of the transferring county's borders and within another district's geographical area, where the original district did not consent. Ronald and King County argue that the statute allows a county to unilaterally transfer area outside its own territory. They rely on the ordinary meaning of "area served" as simply the areas receiving sewer service from the system. They contrast it with the language in former RCW 36.94.310, which contains an express boundary restriction: "a municipal corporation may transfer to the county *within which all of its territory lies*, . . . the property constituting its system of sewerage." (Emphasis added.) Olympic, Snohomish, and Woodway argue that the "area served" does not include territory outside the county boundary, even if the county serves the area by contract.

The statutory context and related statutes support the conclusion that the "area served" is limited to territory within the transferring county's geographic boundaries. A county cannot transfer the primary service right via annexation to an area outside of its borders where it provides service by contract.[2] Related statutory provisions support this reasoning because (1) permission is needed whenever districts or counties provide service within another's geographic boundary and (2) the statutes distinguish between full jurisdiction and contractual provisions of service.

First, the statutes authorizing districts and counties to provide sewer service outside their boundaries require permission from the original entity. Sewer districts may serve areas within multiple counties, cities, towns or other political subdivisions with approval from the original entity, as occurred in this case. Former RCW 56.04.020; former RCW 56.02.055. As already mentioned, sewer districts can also serve areas within other districts with consent. Former RCW 56.08.060. Similarly, counties are authorized to "individually or in conjunction with another county" operate sewer systems "within all or a portion of the county." Former RCW

---

[2] Our interpretation of the area subject to annexation under former RCW 36.94.410-.440 (1984) is limited to the statutory scheme as it existed in 1985. The statutes have been subsequently amended. Notably, chapter 36.93 RCW now defines "service area of a city, town, or special purpose district" as "all of the area within its corporate boundaries" and, for extensions of water and sewer service, "the area outside of the corporate boundaries which it is designated to serve pursuant to a coordinated water system plan approved in accordance with RCW 70A.100.050[] and . . . a comprehensive sewerage plan approved in accordance with chapter 36.94 RCW and RCW 90.48.110." RCW 36.93.090(4).

36.94.020 (1981). Counties may also operate within the boundaries of an existing sewer district with the district's written consent. Former RCW 36.94.170.

In contrast, the annexation procedure of former RCW 36.94.410-.440 (1984) does not include a consent requirement. The annexation procedure involves two entities: the transferring county and the receiving sewer district. Former RCW 36.94.420. Notice is given only to the ratepayers and by publication. Where certain statutory language "is used in one instance, and different language in another, there is a difference in legislative intent." *Seeber v. Pub. Disclosure Comm'n*, 96 Wn.2d 135, 139, 634 P.2d 303 (1981). The absence of a consent requirement under former RCW 36.94.410-.440 evinces that "area served" does not include territory outside the transferring county's boundaries. This interpretation is also consistent with former Title 56 RCW and its limitation against the unilateral annexation of territory that is within a separate district.

Second, the statutes draw a key distinction between temporary contractual service and full jurisdiction. As occurred here, sewer districts may contract with other entities for the provision of services. Former RCW 56.08.060; former RCW 36.94.170 (1971) (authorizing counties to serve within sewer districts under contract). The provision of services with permission or by contract are by nature revocable. Whereas, districts or counties otherwise retain full jurisdiction to operate a sewer system within their own territories. Former RCW 56.04.020; former RCW

56.08.060; former RCW 36.94.020. Annexation is a grant of full jurisdiction that includes the provision of services and the power to issue bonds and collect taxes; it is more than a contractual relationship. *See* former RCW 36.94.430 (1984); former RCW 56.36.060 (1981). No authority exists showing that this form of permissive service may be converted to full annexation authority

Further, the identified subject of the underlying transfer under former RCW 36.94.410 is the sewer system "operated by a county under the authority of this chapter[, 36.94 RCW]." A county's power to operate, maintain, and generate funds for its sewer system is limited to territory "within all or a portion of the county." Former RCW 36.94.020.

The plain meaning of the "area served" subject to transfer and annexation under former RCW 36.94.410-.440 is limited to areas within the transferring county's geographic boundary. To be properly transferred and annexed under these statutes, the territory must be exclusively within the transferring county's geographic service area and cannot be within another district's service area, unless the existing district relinquishes its sewerage authority to the transferring county under former RCW 36.94.170. Here, King County could not transfer annexation authority of Point Wells to Ronald because Point Wells is not within King County, it is within Snohomish County. The annexation is further prohibited because Point Wells was within Olympic's geographic boundary and Olympic did not relinquish

15

its sewerage authority to King County. The statutory authority does not permit a hostile takeover of another district's service area without notice or permission, which is what happened here.

However, under the transfer agreement, a county may transfer its existing contractual obligations, which may include the provision of services to areas within other districts. Former RCW 36.94.410; RCW 36.94.330. But service provided permissively as a contractual obligation is not subject to annexation. Ronald's reliance on the "first in time" principle is misplaced. LAWS OF 1981, ch. 45, § 1. The statutory scheme does not permit the transfer annexation process to transform a contractual provision of services into annexation. Although Ronald has served the area since 1986, it has done so by contract under the obligation it inherited from King County. This provision of service was by nature permissive and revocable. The 1985 court lacked the statutory authority to annex the Point Wells area, which was being served by Ronald on a contract basis.

III. Jurisdiction

Ronald and King County assert that the time to properly challenge the order has passed. They argue that because this is a collateral challenge, even if the 1985 Order is erroneous, it was entered with proper jurisdiction and is merely voidable. Olympic, Snohomish County, and Woodway claim that the order is void for lack of personal and subject matter jurisdiction and can be struck down at any time. The

16

parties further dispute the circumstances under which an order may be declared void.

> "[t]here are in general three jurisdictional elements in every valid judgment, namely, jurisdiction of the subject matter, jurisdiction of the person, and the power or authority to render the particular judgment. For the absence of any one of these elements, when properly apparent, the judgment may be vacated at any time."

Relevant to the issue here, our jurisprudence has established that

*John Hancock Mut. Life Ins. Co. v. Gooley*, 196 Wash. 357, 370, 83 P.2d 221 (1938) (quoting 1 A.C. FREEMAN, A TREATISE OF THE LAW OF JUDGMENTS § 226 (5th ed. rev. 1925)). Here, the latter two jurisdictional elements are implicated: personal jurisdiction and authority to render a particular judgment, which in modern cases has been recognized as a component of subject matter jurisdiction. The 1985 Order is flawed in both ways.

First, Snohomish County, Olympic, and Woodway were not parties to the 1985 superior court action, so the court did not have the authority to enter an order affecting their sewerage service rights. These entities were not joined as necessary parties under CR 19 or given personal notice of the 1985 action. To determine whether joinder is needed for a just adjudication, courts engage in a three-step analysis. Courts determine whether the absent party is necessary, whether joinder is feasible, and, if joinder is unavailable, whether the action should still proceed without the party. *Auto. United Trades Org. v. State*, 175 Wn.2d 214, 221-22, 285

P.3d 52 (2012). An absentee is a necessary party where they claim a legally protected interest in the action and their ability to protect that interest will be impaired or impeded by adjudication in their absence. *Auto. United*, 175 Wn.2d at 223. Point Wells was located within the geographic boundaries of Snohomish County, Olympic, and Woodway. The purported transfer and annexation of the Point Wells service area to Ronald directly implicated their interests in the provision of sewerage service to Point Wells. In particular, Olympic possessed the primary authority to provide service to Point Wells, and the 1985 Order purports to extinguish and reassign that authority. Snohomish County, Olympic, and Woodway were necessary parties and joinder would have been feasible.

Ronald and King County assert that the 1985 action was an in rem proceeding and is binding on nonparties. They claim that they followed the required notice procedures of former RCW 36.94.410-.440. As we discussed above, former RCW 36.94.410-.440 does not permit the transfer and annexation of territory outside the transferring county's geographic boundary, so compliance with this procedure was inadequate to adjudicate the annexation of Point Wells. Assuming their characterization of the 1985 proceeding as in rem is correct, it does not excuse their failure to join or adequately notify parties with legally protected interests. *See Port of Grays Harbor v. Bankr. Estate of Roderick Timber Co.*, 73 Wn. App. 334,

869 P.2d 417 (1994) (discussing the required joinder of a party in an in rem condemnation proceeding).

There were two layers of notice required here. At minimum, due process requires that in "*any* proceeding which is to be accorded finality" notice must be given and "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950) (emphasis added). Further, to obtain personal jurisdiction over a party, Washington law requires that "'[b]eyond due process [requirements], statutory service requirements must be complied with in order for the court to finally adjudicate the dispute between the parties.'" *Weiss v. Glemp*, 127 Wn.2d 726, 734, 903 P.2d 455 (1995) (second alteration in original) (quoting *Thayer v. Edmonds*, 8 Wn. App. 36, 40, 503 P.2d 1110 (1972)). Ronald and King County failed to comply with these requirements. Notices of the King County Council hearing and 1985 court hearing were published in the newspaper. Assuming these notices were constitutionally adequate, service by publication remained unavailable. Service by publication is reserved for those instances where the party cannot be found within the state. RCW 4.28.100. Snohomish County, Olympic, and Woodway were not served with process. As a result, the 1985 court never obtained personal jurisdiction over these entities.

We previously held that the municipal court lacked the authority to issue relief that implicated the interests of a nonparty. *City of Seattle v. Fontanilla*, 128 Wn.2d 492, 502, 909 P.2d 1294 (1996). The municipal court declined to order the State to reimburse the litigant under RCW 9A.16.110 because the State was not a party and had no notice of the action. We held that the municipal court acted properly and was "without authority to order an entity that is not a party to the litigation to do anything." *Fontanilla*, 128 Wn.2d at 502. This is consistent with the general rule that a judgment is not binding on an entity that has not been made a party to the action by service of process.

Similarly, in this case Snohomish County, Olympic, and Woodway were not made parties to the 1985 action, although they possessed a legally protected interest over sewerage service in Point Wells. The 1985 court failed to obtain personal jurisdiction over these parties and, thus, lacked the authority to issue an annexation order that implicated their rights and interests. To the extent that it did so here, that portion of the 1985 Order is void.

Second, the 1985 Order is void because the court lacked the general statutory authority to order the annexation of Point Wells to Ronald. We take this opportunity to expound on the doctrine of subject matter jurisdiction. We hold that subject matter jurisdiction incorporates the court's authority to issue a particular form of relief, as determined by the nature of the case.

In *Marley v. Department of Labor & Industries*, we reviewed an administrative denial of a worker's compensation claim. 125 Wn.2d 533, 541, 886 P.2d 189 (1994). The plaintiff argued that the Department of Labor and Industries' order was void for lack of subject matter jurisdiction because it incorrectly determined that she was living in a state of abandonment under RCW 51.08.020. We held that at most, the department made an erroneous decision regarding abandonment but it had proper jurisdiction to decide the claim, that is, whether Marley was living in a state of abandonment. We adopted the Restatement (Second) of Judgments' approach to subject matter jurisdiction: "'A judgment may properly be rendered against a party only if the court has authority to adjudicate the *type of controversy* involved in the action.'" *Marley*, 125 Wn.2d at 539 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 11 (AM. LAW INST. 1982)). We held that "[a] court or agency does not lack subject matter jurisdiction *solely* because it may lack authority to enter a given order." *Marley*, 125 Wn.2d at 539 (emphasis added). Rather, a court "lacks subject matter jurisdiction when it attempts to decide a type of controversy over which it has no authority to adjudicate." *Marley*, 125 Wn.2d at 539. This implies that the tribunal has "no authority to decide the claim at all, let alone order a particular kind of relief." *Marley*, 125 Wn.2d at 539.

Based on this discussion, Ronald claims that the court's authority to enter a particular order is wholly separate from subject matter jurisdiction. However, our

discussion in *Marley* stands for the proposition that the court's authority to enter a particular order is simply one part of subject matter jurisdiction. When determining subject matter jurisdiction, the controlling question is whether the court possessed the authority to adjudicate the *type of controversy* involved in the action. We defined "type of controversy" as referring to "the nature of a case and the kind of relief sought." *Dougherty v. Dep't of Labor & Indus.*, 150 Wn.2d 310, 317, 76 P.3d 1183 (2003). Thus, subject matter jurisdiction is composed of two necessary components: (1) the authority to adjudicate the particular claim and (2) the authority to issue a particular form of relief. These two components are intertwined. The form of relief is limited by the nature of the particular claim. For example, in a quiet title property claim, the court's exercise of jurisdiction is confined to issuing the appropriate relief, that is, to quiet title. The court would exceed its relief authority if it were to issue tax relief. To the extent an order did so, that portion of the order would be void. The dispositive inquiry to determine subject matter jurisdiction is whether the court had overall authority to adjudicate the particular claim, and the authority to issue a particular form of relief follows. Logically, we look to the relief issued because it is indicative of whether the court adjudicated a controversy that it should not have. Both are necessary components of subject matter jurisdiction.

Although we reviewed a contempt order in *Dike v. Dike*, our discussion is informative here. 75 Wn.2d 1, 8, 448 P.2d 490 (1968). In that case, we held that

even where the underlying order is erroneous and the party fails to comply with it, the court maintains subject matter jurisdiction to enter a contempt order. We held that this was a legal error, not a jurisdictional deficiency. Notably, we distinguished that where the court "'has jurisdiction of the parties and of the subject matter, and has the power to make the order or rulings complained of, but the latter is based upon a mistaken view of the law or upon the erroneous application of legal principles, it is erroneous,'" as opposed to void for lack of jurisdiction. *Dike*, 75 Wn.2d at 7 (quoting *Robertson v. Commonwealth*, 181 Va. 520, 536, 25 S.E.2d 352 (1943)). The long-standing principle still applies that "'[o]bviously the power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct until set aside or corrected.'" *Dike*, 75 Wn.2d at 8 (internal quotation marks omitted) (quoting *Robertson*, 181 Va. at 537). But legal errors occur within a court's proper exercise of authority, where the court has the authority to adjudicate the claim and errs in its application of law or fact. Whereas, jurisdictional deficiencies result from a court acting outside of its adjudicative authority where it lacks any power to issue relief.

The distinction between the error in this case and the potential errors discussed in *Marley* and *Dike* is that those courts were authorized to exercise discretion and, at best, merely exercised that discretion improperly. Here, the 1985 court was not statutorily authorized to exercise any discretion over the annexation

of Point Wells. The nature of this controversy is annexation. Annexation authority is a plenary power enjoyed by the State, which the legislature may delegate to courts by statute. *Grant County Fire Prot. Dist. No. 5 v. City of Moses Lake*, 150 Wn.2d 791, 83 P.3d 419 (2004). In this case, former RCW 36.94.410-.440 is a grant of authority from the legislature, allowing superior courts to effectuate the transfer and annexation of service area from a county to a sewer district. As discussed above, former RCW 36.94.410-.440 limited the court's adjudicative authority to territory within King County's geographic service area. The inclusion of Point Wells, which is outside King County's geographic service area, without the involvement of Snohomish County, Olympic, and Woodway is void because it exceeded the court's adjudicative authority.

## CONCLUSION

We affirm the Court of Appeals and remand to the trial court for further proceedings regarding Ronald's remaining claims. We hold that to the extent the 1985 Order purports to annex Point Wells to Ronald, it is void. Ronald's geographic boundary does not include Point Wells and does not extend into Snohomish County. Point Wells remains within the geographic boundaries of Olympic and Snohomish County.

No. 97599-0

_[signature]_

WE CONCUR:

Stephens, C.J.          Gordon McCloud, J.

Madsen, J.

Owens, J.

                        Whitener, J.

25

No. 97599-0

GONZÁLEZ, J. (concurring) – I agree with the majority that the 1985
superior court order is void to the extent it purports to annex an area in Snohomish
County to a sewer district primarily located in King County. While the web of
statutes governing annexation of territory by a sewer district are not a model of
clarity and consistency, it is clear that a cross-county sewer district can be created
only with the participation of both counties' legislative authorities and, at least in
most cases, a public vote. *See* RCW 57.02.050; RCW 57.04.030-.050. As the
majority properly observes, King County could not use the imprimatur of a judicial
proceeding to transfer annexation rights it did not have to allow a King County
sewer district to annex territory in Snohomish County. Majority at 2.

1

I write separately to stress how limited our holding is lest it be seen as an invitation to attack settled judgment on the basis of legal error. Trial judges in Washington State do more than resolve controversies. Among other things, they may preside over marriages and adoptions, administer oaths, and, under certain circumstances, approve the transfer of a sewage system from a water-sewer district to a county and from a county to a water-sewage district. RCW 5.28.010; RCW 26.04.050; RCW 26.33.240; RCW 36.94.310-.340, .410-.440. While the first three judicial functions have their roots in antiquity, a court's subject matter jurisdiction over petitions to recognize transfer of responsibility for water-sewage systems is purely statutory and appears to be a legislative response to the modern difficulties of providing municipal water and sewer services. LAWS OF 1984, ch. 147; LAWS OF 1975, 1st Ex. Sess. ch. 188; *see also generally Cedar River Water & Sewer Dist. v. King County*, 178 Wn.2d 763, 770-74, 315 P.3d 1065 (2013) (discussing delivery of sewer water and sewer services in the upper Puget Sound basin); *Municipality of Metro. Seattle v. City of Seattle*, 57 Wn.2d 446, 448-50, 357 P.2d 863 (1960) (discussing the creation of King County Metro).

While the county is the basic unit of government in Washington State, an enormous number of municipal and quasi-municipal corporations provide the services needed for the health and welfare of our society, both within their districts and by contract outside of them. ROBERT F. UTTER & HUGH D. SPITZER, THE

WASHINGTON STATE CONSTITUTION 187 (2d ed. 2013); Title 52 RCW (fire

protection districts); Title 54 RCW (public utility districts); Title 57 RCW (water-

sewer districts); *Alderwood Water Dist. v. Pope & Talbot, Inc.*, 62 Wn.2d 319,

322, 382 P.2d 639 (1963).   Counties in Washington provide enormously important

public goods.  According to the United States Census Bureau, as of 2017, there

were 1,285 quasi-municipal governments in our state providing everything from air

transportation to sewage services to transportation. *2017 Census of Governments:*

*Organization*, tbl. 8, lines 1298-1334, U.S. CENSUS BUREAU,

https://www.census.gov/data/tables/2017/econ/gus/2017-governments.html

[https://perma.cc/F7FF-VYJU].  There are around 2,000 municipal and quasi-

municipal corporations in our state.  Hugh D. Spitzer, *Washington: The Past and*

*Present Populist State*, *in* THE CONSTITUTIONALISM OF AMERICAN STATES 782

(George E. Connor & Christopher W. Hammond eds., 2008).

Our legislature has created mechanisms to create these districts and adjust

their boundaries. *E.g.*, chs. 52.02-.04 RCW (fire districts); ch. 57.04 RCW (water-

sewer districts).   Generally, these mechanisms require a proper petition, a public

hearing, and a ratifying vote of the people in the relevant area. *E.g.*, RCW

57.04.030-.050.  In addition to creating general systems for creating municipal and

quasi-municipal districts with taxing authority, our legislature has also created a

shortcut that allows counties and water-sewage districts within that county to

transfer water-sewage systems between them by agreement, rather than by petition and election. RCW 36.94.310-.340, .410-.440. Under the statutory shortcut, a county and a water-sewage district wholly within that county have to give notice to ratepayers, publish notice in paper of general circulation, hold a hearing before the county legislative body, and seek approval of the superior court of the county. RCW 36.94.310, .340, .420. The general requirement of a vote of the people is eliminated.

This statutory shortcut is not available for sewer districts that cross county boundaries. RCW 36.94.310, .340, .420. Perhaps the legislature reasoned that since the voters outside of the county had not had an opportunity to vote for the legislative authorities that initiated and consented to the transfer, it would be inappropriate to bypass the normal process and the normal ratifying election. Whatever the reason, no court had the power to confirm cross-county sewer district territorial annexations in 1985 or (as far as I can tell) at common law. Had Snohomish County or Olympic View Water and Sewer District intervened in the 1985 proceedings, the trial court should have promptly granted a motion to dismiss.

Accordingly, I agree with the majority that the 1985 order was entered without subject matter jurisdiction. "The critical concept in determining whether a court has subject matter jurisdiction is the 'type of controversy.'" *Dougherty v.*

*Dep't of Labor & Indus.*, 150 Wn.2d 310, 315, 76 P.3d 1183 (2003) (quoting

*Marley v. Dep't of Labor & Indus.*, 125 Wn.2d 533, 539, 886 P.2d 189 (1994)).

Approving a cross-county sewer district annexation is simply too different a case

from one seeking the approval of an in-county transfer of a sewage system.  The

differences between those two types of cases may seem picayune but are in fact

profound.  It goes to the very way our state constitution has divided up power and

responsibility between the legislature and the courts and between the state, county,

and local governments.  WASH. CONST. art. II, XI.

I emphasize, however, that Washington State superior courts are courts of

general jurisdiction.  WASH. CONST. art. IV, § 6; *Wagner v. Alderson*, 91 Wash.

157, 160, 157 P. 476 (1916).  If one state superior court possesses subject matter

jurisdiction to hear a type of case, all state superior courts possess subject matter

jurisdiction to hear that type of case.  *Dougherty*, 150 Wn.2d at 317.   Here, no

court had that subject matter jurisdiction to hear this type of case.  I would use our

broad authority to craft the appropriate remedy recognized in RAP 12.2 and hold

the 1985 order void.  *See also* CR 60(b)(5).

With these observations, I respectfully concur.

5

González, J.

Montoya-Lewis, J